# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CC-00678-SCT

*ROY L. HORTON*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, AGENCY OF THE STATE OF MISSISSIPPI, ACTING BY AND THROUGH ITS BOARD OF TRUSTEES*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES C. MARTIN |
| | JAMES A. PEDEN, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DAVIS C. SCOTT, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | AFFIRMED - 5/14/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/4/98 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS AND CASE

¶1. The position of Executive Director of the Board of Public Accountancy was created on February 26, 1976 and was offered to and filled by Roy L. Horton ("Horton") on that date. The Executive Director is responsible for the operation of the agency and serves at the pleasure of the Accountancy Board. The Accountancy Board receives no state-appropriated funds but is funded rather by fees charged to accountants in this State. The "special" funds are held by the State Treasurer in a separate account and released to the Board pursuant to an annual budget request of the Board with legislative approval.

¶2. Horton served as Executive Director for 18 years and 7 months; from February 26, 1976 through September 30, 1994. In addition to his work as Executive Director of the Board, Horton ran a private certified public accountancy (CPA) practice from the same offices and location from which he conducted his Board duties. When necessary, Horton used his employees in his private CPA practice to assist him in his work for the Accountancy Board. Horton reimbursed himself for the Board's use of his private offices, and he charged the Board for various other expenses, such as for copies made at his office.

¶3. The record reveals that Horton understood that his job classification as Executive Director was not considered by the Public Employees Retirement System (PERS) to be that of a state employee eligible for participation in PERS, and Horton made efforts to change this classification. In 1981, Horton requested that the State Personnel Board recognize the Executive Director as an employee position, but the Personnel Board informed Horton that he needed legislative approval for such a reclassification. The Legislative Budget Analyst informed Horton that the Legislature would not consider such a reclassification without first receiving a recommendation from the Personnel Board. In 1986, Horton submitted the Accountancy Board's budget proposal with the Executive Director designated as an employee position, but the Legislature once again denied the employee designation request for the Executive Director position[1].

¶4. In 1993, following the Internal Revenue Service's (IRS) classification of the Executive Director position as an employee position, Horton formally requested membership in the retirement system as an employee, including retroactive service credit for over eighteen years service, in the PERS retirement system. The PERS Policy Committee denied Horton the membership and credit by a letter dated August 26, 1994, following which Horton appealed to the Claims Committee of the PERS Board of Trustees. On February 21, 1995, the PERS Board of Trustees issued an order denying Horton's appeal, and Horton filed a Petition/Complaint for Mandatory Injunction in the Nature of a Judicial Review with the Chancery Court of the First Judicial District of Hinds County.

¶5. The Chancery Court transferred the complaint to the Circuit Court of the First Judicial District of Hinds County and, on May 24, 1996, the Circuit Court affirmed the order of the PERS Board of Trustees. Horton timely appealed to this Court.

## ISSUES

**A. The Circuit Court Erred in Determining That Roy Horton Was An Independent Contractor.**

**B. The Circuit Court Erred by Disregarding The Findings and Determination of the Internal Revenue Service That Roy Horton Was Not An Independent Contractor, To Which Findings And Determination The State Of Mississippi Accepted and Acquiesced.**

**C. The Circuit Court Erred In Determining That The Decision of the Board of Trustees of PERS is in Accordance With the Law.**

**D. The Circuit Court Erred in Determining That The Findings of Fact of the Board of Trustees of PERS Were Not Arbitrary and Capricious.**

## LAW

¶6. Horton's first four points of error are combined as they all deal with the issue of whether the Circuit Court ruled correctly in affirming the ruling of the PERS Board of Trustees. Although Horton discusses the issue of whether or not his job with the Accountancy Board was in the nature of an independent contractor position, the PERS Board of Trustees ruling from which this appeal is taken did not issue a finding in this regard. The PERS Board of Trustees' ruling was based rather on the Board's finding that the Accountancy Board lacked the authority to hire the Executive Director as an non-contractual employee at all and that Horton was thus not an "employee in the state service" for the purpose of PERS.

¶7. The PERS Board of Trustees wrote in its ruling that:

> An individual may not be an employee within the meaning of these sections if the individual's employer has no authority to employ any individual as an employee. In this instance, the Mississippi Legislature, by appropriation each year, had not authorized any employee positions, nor any funds for the payment of salaries, for the Accountancy Board during Mr. Horton's tenure as executive director until 1989 when it approved one position that was later occupied by an individual other than Mr. Horton. The Legislature did authorize the payment of contractual service funds to individuals providing services. Under these circumstances, it appears that the Accountancy Board was without lawful authority to employ and pay any individual, including Mr. Horton, as an employee until 1989. This limitation on the lawful authority of the Accountancy Board was acknowledged by a member of the Accountancy Board in his testimony before the Claims Committee.

¶8. In the view of this Court, the Board of Trustees was correct in concluding that the Accountancy Board lacked statutory authority to employ the Executive Director as a salaried employee eligible for PERS participation. The evidence in the record is overwhelming that, prior to the IRS' classification of Horton as an employee in 1993, both Horton and the Accountancy Board were aware that the Executive Director position was classified a contractual, non-employee position. It is undisputed that, prior to January 1, 1994, Horton classified his income from the Accountancy Board on his IRS tax returns as "non-employee" income for which no W-2 withholdings were made.

¶9. Communications between the Accountancy Board and PERS clearly indicate that both Horton and the Accountancy Board were aware that Horton's PERS status was that of a non-employee. On June 14, 1976, Horton's secretary wrote a letter to PERS in which she stated that:

> This is to inform you that as of March 1, 1976, the Mississippi State Board of Public Accountancy no longer has a paid employee. The last salaried employee was Mrs. Delynn Oliver.

The Accountancy Board did not claim employee status for any of their workers until June 30, 1989, when Horton wrote to PERS that:

> The Mississippi State Board of Public Accountancy requests that the Public Employees Retirement System reactivate the Mississippi State Board of Public Accountancy, #69-0650001-403, effective July 1, 1989, because on July 1, this agency will have a full-time

salaried employee.

Horton and the Accountancy Board did undertake formal efforts to have the Executive Director position classified as a salaried employee following the IRS' classification of the position as an employee position in 1993. On March 24, 1994, Thomas A. Ross, Secretary of the Accountancy Board, wrote to Mississippi House Representative Ted Foster, requesting that the status of the Executive Director position at the Accountancy Board be changed from contractual to employee. Specifically, Ross wrote that:

> The Mississippi Board of Public Accountancy (The Board) believes that the State of Mississippi and The Board will be better served by converting the method of compensating the Executive Director of the Board from contractual to employee. In order to accomplish this, we respectfully request that the Fiscal Year 1995 Budget Request be amended to increase Salaries, Wages & Fringe Benefits by $ 75,000 and to decrease Contractual Services by $ 75,000. Further, we request that the number of personnel positions authorized be increased from two (2) to three (3). It is the intent of The Board to have the Executive Director be compensated by The Board rather than under a contractual arrangement.

It is thus apparent that the Board considered it necessary to seek a reclassification of the Executive Director position by the Legislature in order to have Horton "compensated by the Board as an employee rather than under a contractual arrangement." The fact that the Legislature did not change the classification of the Executive Director position from a contract position to a salaried employee position clearly supports the PERS trustees' conclusion that the Board did not have the authority to compensate Horton as a salaried employee instead of as a contractual worker. Upon failing to secure legislative approval, Horton would have this Court assume a legislative role in determining that the Executive Director position is in fact a salaried employee position entitled to retroactive funding. Such an action by this Court would, however, be improper.

¶10. This Court has sympathy for Horton's position, given that it appears that the approval of his participation in PERS was caught in something of a legislative "Catch-22." The record indicates that the Legislature refused to classify the Executive Director position as an employee position in large part because the Personnel Board would not recommend that he be classified as an employee. In turn, the PERS ruling from which the present appeal is taken is based on the fact that the Legislature had not classified the Executive Director position as an employee position. Nevertheless, the fact remains that, whatever its reasons for doing so, the Legislature refused to grant the Accountancy Board the authority to hire the Executive Director as a non-contractual employee during Horton's tenure. In the view of this Court, the remedy for legislative inaction on an issue within the Legislature's purview and authority does not lie with this Court, but rather with the Legislature.

¶11. This Court's scope of review in the present case is quite limited. This Court should only reverse PERS' ruling in the present case if this ruling is arbitrary and capricious and unsupported by substantial evidence. It can not be validly contended that the actions of the PERS Board were arbitrary and capricious, and the Board's ruling is consistent with applicable statutory provisions. Miss. Code Ann. § 25-11-105(a) (Supp. 1997) provides that:

> All persons who shall become employees in the state service after January 31, 1953, and whose wages are subject to payroll taxes and are lawfully reported on IRS Form W-2, except those

specifically excluded, or as to whom election is provided in Articles 1 and 3, shall become members of the retirement system as a condition of their employment.

Thus, Miss. Code Ann. § 25-11-105 requires that a worker be an "employee in the state service" in order to qualify for State retirement benefits, and the PERS Board concluded that, whatever the characteristics of Horton's position, the Legislature's failure to grant the Board permission to compensate the Executive Director as an employee precluded Horton's participation in PERS under applicable statutes. This ruling by the PERS Board of Trustees is supported by substantial evidence and is affirmed.

### E. The Chancery Court Erred in Refusing Jurisdiction and Review and Transferring the Appeal To Circuit Court, Which Resulted in the Circuit Court Providing Less Than the Review to which Appellant was Entitled.

¶12. Horton's final point of error is a procedural one in which he argues that his complaint filed in Chancery Court was improperly transferred to Circuit Court. Horton originally sought review of the ruling of the PERS Board of Trustees through a Petition/Complaint in Chancery Court for a mandatory injunction to permit his membership in the retirement system and to grant him retroactive service credit. The Chancery Court transferred the complaint to the Circuit Court, which granted a writ of certiorari, but which nevertheless affirmed the ruling of the PERS Board of Trustees. Horton argues that the Chancery Court erred in transferring the case to Circuit Court, but he cites no authority to the effect that the Chancellor did not act within his authority in transferring the case to Circuit Court.

¶13. Effective April 7, 1995, Mississippi Code Ann. § 25-11-120 (Supp. 1994) requires that all appeals from the PERS Board be made by writ of certiorari to Circuit Court. Although this statute was not in effect at the time Horton filed his petition with the Chancery Court, it nevertheless appears that the Circuit Court was the proper court to hear Horton's appeal from the PERS Board ruling. Moreover, Article 6, § 147 of the Mississippi Constitution provides that:

> No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction ...

Thus, even if the transfer of the case to circuit court had been in error, which it was not, the Mississippi Constitution would bar a reversal on this grounds. This point of error is without merit, and the ruling of the Chancery Court transferring the present case to Circuit Court is affirmed

¶14. **JUDGMENT IS AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. The Legislature approves the designation of "state employee" and controls the number of employees a state agency may employee.